INTERNATIONAL LADIES' GARMENT WORKERS'
UNION, UPPER SOUTH DEPARTMENT,
AFL-CIO *v.* QUALITY MANUFAC-
TURING CO. ET AL.

No. 73–765.   Argued November 18, 1974—Decided February 19, 1975

*Bernard Dunau* argued the cause for petitioner.   With him on the briefs were *Max Zimny, Bernard Rubenstein,* and *Bernard P. Jeweler.*

*John E. Jenkins, Jr.,* argued the cause and filed a brief for respondent Quality Manufacturing Co.   *Solicitor General Bork, Peter G. Nash, John S. Irving, Patrick Hardin, Norton J. Come,* and *Linda Sher* filed a brief for respondent National Labor Relations Board.*

---

*Jerry Kronenberg* and *Milton Smith* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

We set this case for argument with No. 73–1363, *NLRB v. Weingarten, Inc., ante,* p. 251, 416 U. S. 968 (1974). The National Labor Relations Board held in this case, as it held in *Weingarten,* that the denial by respondent employer (hereinafter respondent) of an employee's request that her union representative be present at an investigatory interview which the employee reasonably believed might result in disciplinary action, constituted an unfair labor practice in violation of § 8 (a)(1) of the National Labor Relations Act, as amended, 61 Stat. 140, 29 U. S. C. § 158 (a)(1), because it interfered with, restrained, and coerced the individual right of the employee, protected by § 7 of the Act, 29 U. S. C. § 157, "to engage in . . . concerted activities for . . . mutual aid or protection . . . ," 195 N. L. R. B. 197 (1972). The Court of Appeals for the Fourth Circuit held, as the Court of Appeals for the Fifth Circuit held in *Weingarten,* that this was an impermissible construction of § 7 and denied enforcement of so much of the Board's order as directed respondent to cease and desist from requiring an employee requesting such representation to take part in such an interview without that representation if the employee reasonably feared disciplinary action, and also refused enforcement of provisions that directed respondent to offer reinstatement, with backpay, to the employees who were discharged for asserting this right. 481 F. 2d 1018 (1973). We reverse.

Respondent, a manufacturer of women's clothing, discharged Catherine King on October 16, 1969, after she refused to attend an interview with the company president without union representation. That same day, the company discharged shop chairlady Delila Mulford for her persistence in seeking to represent King at the inter-

view, and assistant chairlady Martha Cochran for filing grievances on behalf of King and Mulford.

The events leading to the discharges began on October 10, 1969, when Mulford, King, and two other employees met with Lawrence Gerlach, Sr., the company president; Mary Kathryn Gerlach, his wife and company production manager; and Lawrence Gerlach, Jr., their son and general manager, to complain that they were unable to make a satisfactory wage under the piecework system then in effect. The meeting ended on an acrimonious note when Gerlach, Jr., ordered the employees to return to work and told them that they were free to "go elsewhere" if they were dissatisfied with the company. Later that day, Mrs. Gerlach noticed that King had shut off her machine and was speaking to several other workers who had also stopped their machines. When ordered to resume production, King told Mrs. Gerlach to mind her own business. Thereupon Mrs. Gerlach directed King to report to Gerlach, Sr.'s office. King complied, but on her way to the office asked union chairlady Mulford to accompany her. Gerlach, Sr., met King and Mulford in the anteroom to his office. He told Mulford to return to work, and ordered King into his office alone. Neither woman complied, and King stated that she would not submit to an interview in the absence of her union representative. At this, Gerlach, Sr., told both women to return to their work stations. That Sunday, October 12, Mrs. Gerlach phoned Mulford and told her that she was suspended for two days. The Board found that the suspension was motivated by Mulford's attempt to represent King at the interview with Gerlach, Sr. 195 N. L. R. B., at 199.

On Monday, October 13, when King reported for work her timecard was missing from the rack, indicating under plant practice that she was wanted in the president's of-

fice. Before going to the office, however, King asked assistant chairlady Cochran to accompany her. They were met at the president's office by Mrs. Gerlach who told Cochran to go directly to work if she wanted to keep her job because the president wanted to take up with King where they left off on Friday. Cochran replied: "Well, Mrs. Gerlach, I'm sorry, but if that's what you want to talk to her about, that is Union business and she has asked me to represent her." Gerlach, Sr., told King he would not return her timecard until she met with him alone in his office. King and Cochran then waited outside the president's office all day, and during this time Cochran's timecard was also removed from the rack.

Again on the morning of October 14, Gerlach, Sr., told King he would not return her timecard until she agreed to meet with him alone. When Cochran asked about her timecard, Gerlach replied that she was suspended for two days for being away from her machine. The Board termed this reason "pretextual," and found that in fact Cochran's attempt to represent King was the reason for the suspension. Neither King nor Cochran worked that day. Much the same transpired the next day, but this time Mulford, whose two-day suspension had expired, was also present. After King refused to meet in private with Gerlach, Sr., she and Cochran left the plant, and Mulford returned to work.

Finally, on October 16, all three women went to the president's office. Mrs. Gerlach gave Cochran her timecard and she returned to work. Gerlach, Sr., told King if she refused again to meet with him alone she would be fired. King walked out. Mulford then asked if she could return to work, and Gerlach, Sr., replied: "No, you've abandoned your job. You're finished." Later that same day, Cochran attempted to present grievances on behalf of King, Mulford, and herself to Gerlach, Jr. He stated

he was about to leave town and had no time for such things. When she put the list of grievances on his desk, he picked them up and threw them into the wastebasket. He then pulled Cochran's timecard and told her: "You worked this morning, but you're not working this afternoon." When Cochran asked Gerlach, Sr., if she had been fired he replied: "Just go home. You wanted to draw unemployment now go on and draw it."[1]

The Board found that "[t]here can be no doubt that under the facts and circumstances of this case King had reasonable grounds to believe that disciplinary action might result from the Employer's investigation of her conduct." 195 N. L. R. B., at 199. King, therefore, had a reasonable basis for desiring union representation, and the Board found that respondent discharged her for insisting on that right. The Board found further that Mulford and Cochran were suspended, and Mulford discharged, because they insisted on representing King at the interview. Since Mulford and Cochran were engaging in a protected concerted activity, the suspensions and Mulford's discharge violated § 8 (a)(1). Finally, the Board determined that respondent discharged Cochran because she sought to file grievances on behalf of King, Mulford, and herself, and that this discharge was in violation of §§ 8 (a)(1) and (3).[2]

---

[1] Later that day, Cochran telephoned Gerlach, Sr.'s secretary to learn whether Gerlach wanted her to report to work the next day. The secretary told her: "He said no." Cochran then asked the secretary to "tell him that he can reach me at my home phone when he needs me." Cochran was never notified to return to work. The Trial Examiner found, and the Board agreed, that Cochran was discharged, and that she did not abandon her job. 195 N. L. R. B. 197, 199 n. 9.

[2] The Court of Appeals enforced that portion of the Board's order relating to Cochran's discharge. The court determined that there was substantial evidence to support the Board's finding that she was discharged because she sought to engage in the protected union activ-

On these facts, our decision today in No. 73–1363, *NLRB* v. *Weingarten, Inc., ante,* p. 251, clearly requires reversal of the judgment of the Court of Appeals insofar as enforcement of the Board's order was denied.[3] The judgment is accordingly reversed and the case remanded to the Court of Appeals with direction to enter a new judgment enforcing the Board's order in its entirety.

*It is so ordered.*

[For dissenting opinion of MR. CHIEF JUSTICE BURGER, see *ante,* p. 268.]

---

ity of filing grievances on behalf of King, Mulford, and herself. The company has not filed a cross-petition, and that aspect of the Court of Appeals' decision is not before us. *Brennan* v. *Arnheim & Neely, Inc.,* 410 U. S. 512, 516 (1973); *NLRB* v. *International Van Lines,* 409 U. S. 48, 52 n. 4 (1972); *Alaska Ind. Bd.* v. *Chugach Assn.,* 356 U. S. 320, 325 (1958).

[3] We do not address respondent's objection that it was denied procedural due process because the Board based its order upon a theory of liability under § 8 (a)(1) allegedly not charged or litigated before the Board. The argument is that respondent participated in the proceedings upon the premise that the issue for decision was whether respondent had decided upon discipline prior to the interview, so as to constitute the interview disciplinary and not investigatory in nature, and had no prior notice that, instead of deciding that question, the Board's decision would turn upon a finding that the employee had "reasonable grounds to fear . . . discipline" at the interview. But respondent failed to file a petition for reconsideration as permitted by Board Rules and Regulations § 102.48 (d)(1), 29 CFR § 102.48 (d)(1), that provides that any material error in the Board's decision may be asserted through a motion for "reconsideration, rehearing, or reopening of the record." Respondent therefore cannot assert its objection on appeal "unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U. S. C. § 160 (e). Respondent did not suggest any "extraordinary circumstances" in either the Court of Appeals or in this Court. The objection therefore may not be considered. *NLRB* v. *Mine Workers,* 355 U. S. 453, 463–464 (1958); *Glaziers' Local No. 558* v. *NLRB,* 132 U. S. App. D. C. 394, 399–400, 408 F. 2d 197, 202–203 (1969).

MR. JUSTICE POWELL, with whom MR. JUSTICE STEWART joins, dissenting.

For the reasons stated in my dissent in *NLRB* v. *Weingarten, Inc., ante,* p. 269, I dissent.