580 F.2d 1053
 99 L.R.R.M. (BNA) 2634, 84 Lab.Cas. P 10,797
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 National Labor Relations Board, Petitioner
 
 1
 v.
 
 
 2
 International Brotherhood of Teamsters, Chauffeurs,
 
 
 3
 Warehousemen & Helpers of America, Local 70, Respondent.
 
 
 4
 No. 77-3242.
 
 
 5
 United States Court of Appeals, Ninth Circuit.
 
 
 6
 Aug. 7, 1978.
 
 
 7
 Before DUNIWAY and WRIGHT, Circuit Judges, and KUNZIG,* Judge.
 
 
 8
 The National Labor Relations Board (NLRB or Board) seeks enforcement of an order against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 70 (the Union). 226 NLRB 205. The order is the result of Union discrimination against non-union members in the operation of a hiring hall. The Union does not dispute the fact that it discriminated but urges that the existence of contractual provisions for settling hiring hall disputes required the use of arbitration procedures as provided by the contract and mandates denial of this enforcement request. However, we are unpersuaded by the Union's arguments and therefore enforce the Board's order as modified herein.
 
 
 9
 The facts of this case are not in dispute. Lucky Stores, Inc. (the Company) and the Union were parties to a collective bargaining agreement which required the Company to hire certain of its employees exclusively through the Union-run hiring hall. The agreement provided that the Company, whenever it needed workmen, would notify the Union's hiring hall and the Union would attempt to supply the workmen requested. The Union's selection of workmen for referral was to be made "on a non-discriminatory basis" and was not to be based upon "or in any way affected by Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect of Union membership, policies or requirements." The Company, in an effort to increase its number of minority employees, often directed minority applicants to the hiring hall for immediate referral and had been successful, on a continuing basis, in getting the Union to refer qualified applicants designated in this fashion.
 
 
 10
 The actions of the Union which are the subject of this application for enforcement involved attempts by two qualified black drivers (King and Saucer) to obtain employment with the Company. The Company stated that they would be hired, but only after they had gotten a referral from the Union. The Company, as had been its policy, then sent these men to the Union hiring hall for immediate referral.
 
 
 11
 In the case of King, who was a member of Teamsters Local 296, the Union dispatcher who was King's first contact at the hiring hall told King that he (King) would have to secure the approval of the Union's business agent before he could be given the "dispatch slip" which the Company required. This occurred on June 2, 1975.
 
 
 12
 Starting the same day, King began a series of unproductive and very frustrating trips between the dispatcher and the business agent which lasted seven days, during which time King was told (or overheard) on several occasions that he could not be given a dispatch slip because he was not a book-carrying member of the Union.
 
 
 13
 The Union began complaining to the Company on June 9, stating that it could not dispatch King because he was not a "book carrying member" of the Union. When the Company reminded the Union of the Union's previous assurances that there would be "no problems," the Union agreed to attempt to effect a transfer. Despite this, however, the Union continued to refuse to refer King, and the Company, saying it did not run a "closed shop," put King to work without a dispatch slip on June 10.
 
 
 14
 After complaining to the Company, the Union told King that his transfer into the Union had been "squared away," and that he was to report to the screening committee on June 17. King did appear before the committee but subsequently secured a job in another department of the Company, one not under the jurisdiction of the Union, and has not since been hired as a driver.
 
 
 15
 The facts relating to the Union's refusal to refer Saucer are similar. On June 10, 1975 Saucer spoke with a Company official about a job and was told to secure clearance from the Union's business agent. Saucer went to the Union hall that day and was given an application for a transfer into Local 70 and an appointment before the Union screening committee. Saucer appeared before the committee but was denied a transfer.
 
 
 16
 On June 20, Saucer went to the hiring hall, spoke with a dispatcher, and was told that he could not be given a dispatch slip since he did not have a Local 70 union card. Saucer returned to the Company, related what had happened to him at the hiring hall, and was put to work. The business agent and the shop steward soon appeared, accused the Company of breaking the contract by hiring a non-union employee, and said that there were "plenty of minority members down at the hall." The Company's industrial relations manager informed the agent that a transfer for Saucer involved nothing out of the ordinary and that the Union could file a grievance. The Union, however, threatened a strike and later that afternoon Saucer was told that he would have to be dismissed until his union difficulties were corrected. Saucer was not employed by the Company after this.
 
 
 17
 Saucer was again involved in a hiring hall incident on September 18, 1975, when he asked a man in the dispatcher's window if he could sign an "out of work" list. He was refused permission to do this since he was not a member of the Union.
 
 
 18
 Based on these facts, and acting on charges brought by King and Saucer, the Board found that the Union had violated sections 8(b)(1)(A) and 8(b)(2) of the Labor Relations Act, 29 U.S.C. Secs. 158(b)(1)(A), (b)(2) (1970), and ordered the Union to cease such practices, to make King and Saucer "whole" for their lost earnings, to notify the Company that it has no objections to the employment of King and Saucer, and to post the usual notices. The Board applied for enforcement of the order pursuant to section 10(e) of the Labor Relations Act, 29 U.S.C. Sec. 160(e) (1970).
 
 
 19
 The "true purpose" or "real motive" of the Union in refusing to refer these men, which is the necessary determination in a case such as this, see Local 357, International Brotherhood of Teamsters v. National Labor Relations Board, 365 U.S. 667, 675 (1961), was found by the Board to be discrimination against non-union members. This finding is clearly supported by the record. Such a discriminatory refusal to refer clearly constitutes a violation of sections 8(b)(1)(A) and 8(b)(2). Furthermore, the Union does not contest the Board's determination that it violated the Act.
 
 
 20
 The Union does, however, argue that hiring hall procedures were covered in the Union-Company contract and that the claims by King and Saucer arising out of hiring hall activities should have been resolved through the explicit dispute resolution procedures in the contract. The Administrative Law Judge based his findings against the Union on a determination that the Union had violated the terms of the contract. The Union correctly notes that exhaustion of contractual remedies is usually required in these circumstances. See, e.g., Brannon v. Warn Brothers, Inc., 508 F.2d 115, 119-20 (9th Cir.1974). The Board, however, concluded that the agreement under which the Union had referred qualified minority workers at the request of the Company constituted an extra-contractual arrangement not susceptible to the dispute procedures of the contract. We do not feel that the Board's discretion in deciding when to defer to contractual-arbitration procedures was exceeded here. See, e.g., National Labor Relations Board v. Walt Disney Productions, 146 F.2d 44, 47-49 (9th Cir.), cert. denied, 324 U.S. 877 (1945).
 
 
 21
 The Union argues that we should not allow the Board to deviate from the rationale employed by the Administrative Law Judge, since such a change, it is claimed, would deprive the Union of due process. The Union, however, failed to raise this issue before the Board through a motion for reconsideration pursuant to 29 C.F.R. Sec. 102.48(d)(1). The Supreme Court has stated that objections not made in a petition for reconsideration may not later be considered absent "extraordinary circumstances." International Ladies' Garment Workers' Union v. Quality Manufacturing Company, 420 U.S. 276, 281, n. 3 (1975).
 
 
 22
 The Union also argues that the September 18, 1975 incident involving Saucer could not form the basis for a violation since the collective bargaining agreement between the Union and Company had expired. However, since we do not disturb the Board's finding that the practice of referring minorities suggested by the Company was an "extra-contractual arrangement," the expiration of the contract is not relevant. We also note that as a practical matter the dropping of this incident would have no effect on this case. Saucer would still have a valid claim for back pay from the earlier violations and the final order of the Board (as well as the required notice) would be unaffected.
 
 
 23
 The Union's final argument is that the notice which the Board is requiring the Union to post is inconsistent with and far broader than the accompanying order. The Board, in its reply brief, admits that there is a conflict between the order which refers to only "Lucky Stores" (the Company) and the notice which refers to the "California Trucking Association." The Board has no objection to replacing the words "California Trucking Association" with the words "Lucky Stores" on the notice, and we hold that the notice should be so modified.
 
 
 24
 Therefore, upon consideration of the parties' briefs, and oral argument, the petition of the Board for enforcement of its order, with the modification that the words "California Trucking Association" be replaced with the words "Lucky Stores" on the required notice, is granted.
 
 
 
 *
 The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation