**NEWTON SHEET METAL, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1767.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1979.

Decided May 21, 1979.

I. John Rossi, Des Moines, Iowa, for petitioner.

Edward S. Dorsey, Atty., N.L.R.B., Washington, D. C., for respondent; John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Howard E. Perlstein, Washington, D. C., on brief.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

This case is before us on a petition for review and cross-application for enforcement of an order of the National Labor Relations Board (Board), finding that Newton Sheet Metal, Inc. (company) had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 8(a)(1) and (3), by requiring an employee, Donald Binegar (employee), to submit to an investigatory interview alone with the company president and denying him the right to have a union representative accompany him to the interview. The Board held that the interview in question was investigatory in nature; that the employee could reasonably anticipate that it could result in disciplinary action, and that the company violated section 8(a)(3) of the Act when it suspended him from work until he participated in such interview unrepresented.

The facts of the case are not in dispute. Those facts relevant to our determination

were found by the Administrative Law Judge (ALJ) as set forth below. The petitioner does not seriously challenge any of these facts:

The relevant events are not in dispute. William B. Briggs, President of Respondent corporation, has been associated with the Company since December 1953, when he and another individual purchased a business operation which had been in existence for 35 years. Respondent extended recognition to the Union as representative of its employees in a unit of roofing, production and maintenance employees of the company in 1973. Their latest collective-bargaining agreement is for the term May 1, 1976 to April 30, 1979.

Around December 28, 1977, Donald E. Binegar, a leadman with 14 years of employment with Respondent, and the most senior employee in the roofing department, delivered insulation materials to a jobsite in Ames, Iowa. The following day another employee was sent to unload more material at the same site and returned to report to Carroll L. Townsend, vice president in charge of roofing operations, that the previous load had not been handled in a proper way. That evening Briggs received a call from the superintendent on the job advising that the material would be unusuable if something was not done. As a result of these reports Briggs, with Stephen P. DeJong, the corporate controller, visited Ames, Iowa, to investigate the complaint.

On the morning of January 3, when Binegar reported to work, Townsend summoned him to Briggs' office where Briggs questioned Binegar why he had unloaded the insulation material where he had. Binegar claimed he unloaded the material where the contractor wanted it—out of the contractor's way. Briggs asked Binegar who he was working for. Briggs also brought up a statement of Binegar's at the meeting of leadmen held in December,[3] and told Binegar that he

[3] The testimony indicates that at that time Binegar made a statement to the effect that he was not going to train employees any more because after he trained them he lost them to other crews.

(Briggs) did not care if Binegar had 15 years of service or was president of the Local Union he had four options which were:

1. Continue in his roofing leadman job, but perform it as he should and assume the responsibilities that go with it;

2. Select demotion to roofer with less responsibility;

3. Accept demotion to a laborer's job with no responsibility; or

4. To quit.

Briggs directed Binegar to report to him the following morning as to which choice Binegar had elected.

That evening at a regular Union meeting Binegar discussed this situation with Ed Cline, the Union's business agent, who told Binegar that he should not go in to meet with Briggs the following morning without a union representative with him.

When Binegar reported to work on January 4, Townsend told Binegar to report to Briggs. Binegar asked Townsend whether it concerned the matter discussed the day before. When Townsend indicated that it did, Binegar stated he wanted his union representative with him. Townsend stated, "OK" he "didn't care." Binegar went to Briggs' office accompanied by the Union's financial secretary, Douglas Sutton, and union committeeman, Ed Gilkinson. When the three walked in Briggs asked Binegar what the other two men wanted. Binegar replied that they were to represent him. Briggs said he would not talk to Binegar with "them two big bullies" present. Binegar told Briggs he would not talk to Briggs without union representation.

(Footnotes 2 and 4 omitted.)

The board claims that under section 7 of the National Labor Relations Act, 29 U.S.C. § 157, an employee has a right to request representation as a condition of participation in an interview with employer representatives where the employee reasonably

believes the interview may result in the imposition of discipline, *citing NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975) and *International Ladies' Garment Workers' Union v. Quality Mfg. Co.,* 420 U.S. 276, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975). With this proposition of law the company agrees.[1] The argument is whether or not the facts in this case justified the employee's claim that the proposed interview was one which he reasonably believed might result in disciplinary action against him.

The ALJ and the Board found that this claim of the employee was justified.[2] We have examined carefully the record contained in the appendix, together with the briefs, and have concluded that there is substantial evidence on the record as a whole to support the findings and conclusions of the Board. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We therefore grant enforcement of the Board's order.

---

1. *See AAA Equipment Service Company v. NLRB,* 598 F.2d 1142 (8th Cir. 1979).

2. It should be noted that it is clear in this case that the employee was fired for refusing to participate in the interview without union representation. This distinguishes it from *NLRB v. Potter Electric Signal Company,* 600 F.2d 120 (8th Cir. 1979) in which the discharges were held by this court to result from a fight on the production line and not because the employee requested representation at the investigatory hearing.