### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### WAYNE TRANSPORTATION, A DIVISION OF WAYNE CORPORATION, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW Local 721, Respondents.

No. 84–2263.

United States Court of Appeals, Seventh Circuit.

Submitted June 27, 1985.*

Decided Nov. 6, 1985.

As Corrected Nov. 8, 1985.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice

provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such state-

ment having been filed, the appeal has been submitted on the briefs and record.

Elliott Moore & John Burgoyne, N.L.R.B., Washington, D.C., for petitioner.

Barry A. Macey, Segal & Macey, Indianapolis, Ind., Leonard R. Page, Leg. Dept. of UAS, Earl R. Boonstra, Kyema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for respondents.

Before CUDAHY, FLAUM, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The National Labor Relations Board (NLRB or the Board) requests that this court enforce an order directing Wayne Transportation and Local 721 of the International Union of Automobile, Aerospace and Agricultural Implement Workers of America (UAW) to reinstate and pay back wages to all employees who were laid off because the collective bargaining agreement under which the union and the employer operated improperly gave preferential seniority to certain union officers. For the reasons discussed below, we enforce the order.

I

For at least twenty years, the collective bargaining agreements between Wayne Transportation and Local 721 provided that, in the event of a reduction in force, certain union officers were to be protected from lay-off by having preferential seniority assigned to them.

Before the company began to suffer massive layoffs, it employed approximately one thousand people. By December 1981 and January 1982, when Wayne Transportation reduced its work force by another fifty-nine individuals there were only thirty-eight employees remaining. Two of the fifty-nine laid off workers, Floyd Johnson and Michael Portanova, had greater natural seniority than several of the union officers protected by the superseniority provision of the collective bargaining agreement. The union officials protected by the superseniority provision held the offices of recording secretary, sergeant-at-arms, trustee, and guide. Johnson and Portanova promptly filed unfair labor practice charges against both the union and the employer, alleging violations of sections 8(a)(1), 8(a)(3), 8(b)(1)(A), and 8(b)(2) of the National Labor Relations Act (NLRA or the Act), 29 U.S.C. §§ 158(a)(1), (a)(3), (b)(1)(A), & (b)(2). After a hearing, an administrative law judge (ALJ) issued a decision on October 25, 1982 dismissing the case. The Board's General Counsel entered exceptions to that decision and Local 721 filed an answer in support of the ALJ's decisions. On April 30, 1984, the NLRB decided the case. *Wayne Transportation*, 270 N.L.R.B. 162 (1984). The Board adopted the factual findings of the ALJ in part but rejected his ultimate conclusion as well as his dismissal of the unfair labor practice charge. The Board noted that the prior case law relied on by the ALJ had been overruled by its recent decision in *Gulton Electro-Voice, Inc.*, 266 N.L.R.B. 406 (1983), *enforced sub nom. Local 900, International Union of Electrical Workers v. NLRB*, 727 F.2d 1184 (D.C.Cir.1984). Consequently, the Board held that, under the rule established in *Gulton*,[1] the employer and the union had violated the Act by enforcing the superseniority provision with respect to the four officers in question.

In response to the Board's application for enforcement, both the employer and the union argue that *Gulton* was incorrectly

---

1. The *Gulton* rule provides that union officials may be accorded preference in layoff and recall only where they "must be on the job to accomplish their duties directly related to administering the collective-bargaining agreement." 266 N.L.R.B. at 409.

decided by the NLRB and that it is contrary to the purposes of the Act in several respects. In addition, Wayne Transportation contends that, if *Gulton* is to be applied, the union, not the employer, should be held primarily liable. Local 721 asserts that, if the Board's position in *Gulton* is to be sanctioned by this court, its standard cannot be applied retroactively since the union and employer had justifiably relied on prior law in giving effect to the superseniority provision. The Board contends that, since the respondents failed to raise this issue before the Board in a petition for rehearing or reconsideration, this court is without jurisdiction to consider the matter.

## II

The permissible scope of superseniority clauses has been addressed in our recent decision in *Local 1384, United Automobile Workers of America v. NLRB (Ex-Cell-O)*, 756 F.2d 482 (7th Cir.1985). In that decision, we stated that the *Gulton* rule is both rational and consistent with the Act. *Id.* at 495. In this appeal, the respondents' objections to the application of the *Gulton* standard focus on their assertions of the need for continued employment of union officials to promote efficiency in union management. The respondents also argue that the *Gulton* standard amounts to an unwarranted "exhaltation" of natural seniority over other interests and, therefore, is an improper balance of the competing interests to be considered in formulating national labor policy under the Act. All of these arguments were thoroughly addressed in *Ex-Cell-O*.[2]

The respondents concede that none of the affected union officials—the recording secretary, sergeant-at-arms, trustee and guide—must perform their union duties in the plant during working hours, one of the two factors that would allow the exercise of preferential seniority under *Gulton*. The union appears to argue, however, that the unofficial function of the recording secretary, the third-ranking local union officer and the person who acts for the president or vice-president in their absence, would make that position protected even under the *Gulton* standard. The union places particular emphasis on the fact that the recording secretary has, on occasion, filled in for absent members in handling grievance matters. Additionally, it relies on *D'Amico v. NLRB*, 582 F.2d 820, 826 (3rd Cir.1978), which held that a recording secretary with a grievance-related function could justifiably be protected by a superseniority provision. *D'Amico* is not controlling here as it was decided prior to the adoption of the *Gulton* rule. In the case before us, the Board ruled that "intermittent, occasional performance of a steward-like duty, on a substitute basis, by an individual whose primary union duties do not involve the performance of steward-like duties or on-the-job contract administration functions, does not warrant a finding that such an individual has steward-like duties sufficient to legitimize an award of superseniority under the standards set forth in *Gulton*." 270 N.L.R.B. at 163. We see no reason to disagree with this determination.

## III

The Board has raised a jurisdictional objection to our considering the issue

---

**2.** The basic factual distinction between this case and *Ex-Cell-O* was not discussed in any of the parties' briefs. In this case, union members were laid off their jobs; in *Ex-Cell-O*, the individuals affected by the superseniority provisions had been moved to other shifts or to other positions within the company. We do not believe that this factual distinction results in any significant legal distinction. The superseniority provision in this case directs that designated union officers "shall rank above all other employees in their respective classifications." One of the contractual provisions addressed in *Ex-*

*Cell-O*, which specifically covered lay-off situations, stated that "in the event that there should be a decrease in the working force," certain officers "shall be the last to be laid off and the first to be recalled provided that they have the ability and fitness to perform the available work." 756 F.2d at 486 n. 5. Therefore, we have held that a superseniority clause specifically governing the situation now before us is susceptible to interpretation under *Gulton*. Therefore, there is no reason to distinguish the present case from the situations in *Ex-Cell-O*.

of *Gulton's* retroactivity for the first time on appeal. It asserts that such review is barred by section 10(e) of the Act, 29 U.S.C. § 160(e),[3] since neither the employer nor Local 721 raised the issue in the initial litigation or moved for reconsideration of the Board's decision.[4] For substantially the reasons discussed by the District of Columbia Circuit in its decision enforcing *Gulton, Local 900, International Union of Electrical Workers v. NLRB,* 727 F.2d at 1190–94, we hold that section 10(e) does not foreclose litigation of the issue in this court. There, the court noted that section 10(e) serves two purposes: 1) its notice function ensures that the Board has the opportunity to resolve all issues properly within its jurisdiction;[5] 2) it ensures against repetitive appeals to the courts. In the circumstances here, neither of these policies would be served by deferral of the issue to another time. It would have been impossible for the respondents to raise the issue in the initial litigation since, at that time, the *Gulton* standard had not been announced. Further, in recommending dismissal of the complaint, the ALJ relied directly on the Board precedents dis-

avowed in *Gulton,* most notably *United Electrical Workers of America, Local 623 (Limpco Manufacturing Co.),* 230 N.L.R.B. 406 (1977), *enforced sub nom. D'Amico v. NLRB,* 582 F.2d 820 (3d Cir.1978). Before the Board, it was to this application of *Limpco* that the General Counsel took exception. The General Counsel's exceptions were met promptly by Local 721's "Answering Brief in Support of the Decision of the Administrative Law Judge." In this brief, the Union explained in detail why, in its view, prior Board precedents were applicable in this case. This brief was certainly adequate to put the Board on notice that any deviation from past precedent was objectionable. Moreover, the instant case was pending at the Board throughout the enforcement proceedings in *Gulton* (which also involved a retroactivity issue), and it can hardly be maintained that the Board, in reviewing this case subsequent to the District of Columbia Circuit's enforcement order in *Gulton,* was not fully cognizant that the same issues were being raised by the parties in this case. Further, as the District of Columbia Circuit noted in enforcing *Gulton,* "[r]etroactivity is neces-

---

3. Section 10(e) provides in pertinent part that, "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e) (1973).

4. Any party who claims that a material error was made in the Board's proceedings may move to have the case reopened, reheard or reconsidered by the Board after entry of a final order. Specifically, 29 C.F.R. § 102.48(d) (1985) provides:

1) A party to a proceeding before the Board may, because of extraordinary circumstances, move for reconsideration, rehearing or reopening of the record after the Board decision or order. A motion for reconsideration shall state with particularity the material error claimed.... A motion for rehearing shall specify the error alleged to require a hearing de novo and the prejudice to the movant alleged to result from such error....
2) The filing or pendency of a motion under this provision shall not operate to stay the effectiveness of the action of the Board unless so ordered. A motion for reconsideration or

rehearing need not be filed to exhaust administrative remedies.

5. As the D.C. Circuit noted, the procedures described in 29 C.F.R. § 102.48(d) are not mandatory. *Local 900, Int'l Union of Elec. Workers v. NLRB,* 727 F.2d 1184, 1192 (D.C.Cir.1984) (*enforcing Gulton* ). Rather, they help to ensure that the Board has adequate notice of objections. *Id.* The Supreme Court emphasized the importance of this notice function in *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 666, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982). In *Woelke,* the Board discussed an issue not squarely presented to it by the parties. No objection was raised before the Board to its disposition of the issue. Thus, the Board was unaware of the parties' dissatisfaction with its resolution and had no opportunity to address the objections. *See also International Ladies Garment Workers' Union v. Quality Mfg. Co.,* 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 975 n. 3, 43 L.Ed.2d 189 (1975) (Board's imposition of liability was not based on reasons presented by the General Counsel. No objection was raised before the Board nor was there any demonstration of "exceptional circumstances" warranting excuse of non-objection).

sarily an issue any time adjudication results in a new rule of law." 727 F.2d at 1193–94. Certainly, in deciding this case in the wake of the enforcement of *Gulton*, the Board was well aware of the existence—and the extent—of its victory.

## IV

Local 721 argues that it is improper for the Board to apply the *Gulton* standard retroactively in this case since the superseniority provision was adopted and implemented in good faith reliance on previous Board policy. This Court implicitly ruled on the retroactivity question in *Ex-Cell-O.*[6] However, we deem it appropriate to deal with the issue explicitly here.

Although the appropriateness of retroactive application of the rule announced in *Gulton* is admittedly a close one, see *NLRB v. Ensign Electric Division of Harvey Hubble, Inc.,* 767 F.2d 1100, 1103–04 (4th Cir.1985) (Haynsworth, J., dissenting), we believe that the better view is the one expressed by all of the courts of appeals which have ruled on the question. *NLRB v. Ensign Electric Division of Harvey Hubble, Inc.,* 767 F.2d 1100 (4th Cir.1985); *NLRB v. Niagra Machine & Tool Works,* 746 F.2d 143 (2d Cir.1984); *Local 900, International Union of Electrical Workers v. NLRB,* 727 F.2d 1184 (D.C.Cir.1984). Focusing on the Supreme Court's approach in *SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), which balances the desirable effects of the new rule against the possible unfairness sustained by the litigants, these courts have uniformly emphasized that the state of the law prior to *Gulton* hardly manifested the sort of stability which would induce firm reliance from entities regularly involved in labor relations.[7] We

---

6. The incidents complained of in *Ex-Cell-O* occurred in 1980. The cases were heard by administrative law judges in February and July 1981. The General Counsel filed exceptions, and the union filed cross-exceptions. On September 30, 1983, the Board issued its decision, *UAW Local 1384,* 267 N.L.R.B. 1303 (1983), holding that *Gulton* was the appropriate standard. This court, noting that the Board had been wrestling with the permissibility of preferential seniority for years, 756 F.2d at 488–90, approved this change of course as "rational and consistent with the act." *Id.* at 495.

7. The issue of preferential seniority for union officials was first raised before the Board in *Dairylea Cooperative, Inc.,* 219 N.L.R.B. 656 (1975), *enforced sub nom. NLRB v. Milk Drivers Local 338,* 531 F.2d 1162 (2d Cir.1976). In that case, the Board approved superseniority for shop stewards not only for layoffs and recalls but also for any benefits involving seniority. The Board concluded that superseniority provisions for shop stewards, which were limited to layoff and recall, were presumptively valid while extending application of this provision to other benefits would be presumptively invalid. *Id.* at 658.

In *United Elec. Workers of America, Local 623 (Limpco ),* 230 N.L.R.B. 406 (1977), *enforced sub nom. D'Amico v. NLRB,* 582 F.2d 820 (3d Cir. 1978), the Board expanded the scope of superseniority provisions to include other union officials whose responsibilities were related to effective representation of all members of the unit. *Id.* at 407–08. *Limpco* was marked by the strong dissent of Members Jenkins and Penello who stated that the Board's action, which established job protection as a fringe benefit for employees' union activities, was a violation of the employees' section 7 rights. 230 N.L.R.B. at 409. The Third Circuit enforced the Board's order but seemed to limit its breadth by requiring the union to provide "credible proof that the individual in question was officially assigned duties which helped to implement the collective bargaining agreement in a meaningful way." *D'Amico,* 582 F.2d at 825.

In *Limpco* 's wake, there were several cases in which Board members' positions diverged widely. For example, in *American Can Co.,* 244 N.L.R.B. 736 (1979), *enforced* 658 F.2d 746 (10th Cir.1981), there were two concurring opinions as well as a dissent. In *American Can,* Members Jenkins and Penello, relying on the limiting language of *D'Amico,* decided that superseniority was permissible only when the union officials also served as stewards or were "otherwise engage[d] in administration of the contract at the place and during the hours of their employment." 244 N.L.R.B. at 737. Member Murphy, joining Members Penello and Jenkins to form the majority, adhered to *Limpco* but decided that the requirement that the responsibilities of the employee/union official be related to contract administration was not met. *Id.* at 740. Chairman Fanning and Member Truesdale disagreed with placement of any restrictions on superseniority provisions. *Id.* The Tenth Circuit enforced the Board's order on the ground that there was no showing of adequate justification for granting superseniority. 658 F.2d at 757.

Finally, following changes in the Board's membership, the *Gulton* Board decided that su-

agree. Indeed, this court in *Ex-Cell-O* noted that "the history of officer superseniority before the Board provides scant support for the idea that the rule of *Limpco* represents a stable determination of what the law ought to be." 756 F.2d at 492. Thus, *Gulton* may best be characterized as a fine-tuning of our national labor policy rather than a deviation from it.

Furthermore, the other factors considered by appeals courts in applying the *Chenery* balancing test also favor retroactive application.[8] Despite the assertions of Local 721, there is no showing here that the superseniority provision in the 1981–1984 contract was included in response to *Dairylea* and *Limpco*. Instead, it appears that the superseniority clause had simply been included in collective bargaining agreements between Wayne and Local 721 for at least twenty years. (Wayne Transportation Br. at 1–2). Moreover, these preferential seniority provisions have been included "as a matter of policy in almost all collective bargaining agreements negotiated by the UAW in the Indiana/Kentucky Region." (UAW Local 721 Br. at 5). Thus, these provisions evidently were included as a matter of course rather than in response to any Board decision. Indeed, after the Board's statement in *American Can Co.*, 244 N.L.R.B. 736, 737 (1979), *enforced*, 658 F.2d 796 (10th Cir.1981) that, "the Board Members have widely divergent views on *Dairylea* issues," it would not have been prudent to rely on earlier Board precedent.

Furthermore, retroactive application of the new rule would tend to foster a significant policy concern of our national labor legislation. As we stated in *Ex-Cell-O*, "[s]uperseniority provisions are suspect under the National Labor Relations Act because they are inherently discriminatory in a way that arguably tends to encourage enrollment and active participation in the union." 756 F.2d at 488. Under the reasoning of *Ex-Cell-O*, the more restrictive approach to superseniority provisions detailed in *Gulton* is more compatible with the Act's purposes because it has the overall effect of guaranteeing individual worker's rights. Therefore, retroactive application of the *Gulton* standard was appropriate in this case.

## V

■ Respondent Wayne Transportation's assertion that the union, not the employer, should bear any liability for improper application of the superseniority provision is without merit. The dispute regarding liability relates to the award of back pay; the employer will have to bear responsibility for reinstating the improperly laid off workers. The cases on which the employer relies in support of this assertion are readily distinguishable as they involve situations in which the union alone caused the unfair labor practice through misrepresentation or coercion of individual employees. *See, e.g., Su Crest Corp.*, 165 N.L.R.B. No. 72 (1967), *enforced*, 409 F.2d 765 (2d Cir.1969) (union caused the employer to believe it was a § 9(a) representative; in reliance on this belief, the employer collected union dues from employees under threat of discharge). Such situations are not comparable to a situation where both parties consented to a collective bargaining agreement provision even though that provision was initially proposed by the union. In *Gulton* and its progeny, liability has been imposed jointly and severally on both the union and

---

perseniority provisions should apply only to union officials/employees whose jobs were "directly related to administering the collective-bargaining agreement." 266 N.L.R.B. at 409.

**8.** Courts, in deciding whether a new rule should be applied, often articulate this balancing in terms of the following factors:

(1) Whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard. *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972); *See Local 900, Int'l Union of Elec. Workers*, 727 F.2d at 1194–95.

the employer, and there is nothing present in this case to warrant an exception to that approach.

## CONCLUSION

The objections to the Board's adoption and application of the *Gulton* standard are precluded by a prior case in this circuit. The issue of retroactive application of that standard is properly before the court. Like the other circuits which have considered the question, we hold that the *Gulton* standard should be applied retroactively. We also find the company's claims that it should not be held liable without merit. Accordingly, the order of the Board is

ENFORCED.