# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 14, 2006     Decided December 15, 2006

No. 05-1373

FLYING FOOD GROUP, INC., *D/B/A* FLYING FOOD,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
05-1395

———

On Petition for Review
and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

———

*Harry J. Secaras* argued the cause and filed the briefs for petitioner.

*David A. Seid*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Robert J. Englehart*, Attorney. *Steven B. Goldstein*, Attorney, entered an appearance.

Before: HENDERSON, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Petitioner Flying Food Group, Inc.,[1] withdrew recognition from an incumbent union after receiving a disaffection petition purportedly supported by a majority of employees in the bargaining unit.  The National Labor Relations Board (NLRB) concluded that Flying Food failed to meet its burden of proving that the union had actually lost majority support, as required by the Board's decision in *Levitz Furniture Co.*, 333 NLRB 717 (2001).  For the reasons set forth below, we deny the company's petition for review and grant the Board's cross-petition for enforcement.

I

Flying Food Group is a Chicago-based provider of in-flight catering services to the airline industry.  On December 17, 1999, the Hotel Employees & Restaurant Employees International Union, Local 355, AFL-CIO prevailed in a representation election for a bargaining unit that included drivers, kitchen employees, and production employees at the company's Miami facility.  After overruling the company's election objections, the Board certified the union as the employees' collective-bargaining representative.

---

[1]The Board's opinion referred to the petitioner as "Flying Foods Group."  *See Flying Foods Group, Inc.*, 345 NLRB No. 10, at 1 (Aug. 25, 2005).  The petitioner's name, however, is "Flying Food Group," *see* Petitioner's Br. i, and to avoid confusion we will refer to it by that name.

Collective bargaining began on May 24, 2000. The parties declared themselves close to arriving at an agreement on all non-economic issues on January 31, 2001. Bargaining subsequently stalled, however, due to differences over wage proposals. Then, on or about April 18, 2001, Flying Food's Human Resources Manager, Daysma Grana, found an employee disaffection petition, purportedly signed by 96 of the unit's 164 employees, that had been slipped anonymously under her locked office door. On the basis of that petition, the company declared that it was "withdrawing recognition of [the] Union as the collective bargaining representative for [the] Miami employees." Joint Appendix (J.A.) 281. Thereafter, the company refused to recognize or bargain with the union.

The union filed unfair labor practices charges against the petitioner, and, on September 28, 2001, the NLRB's General Counsel issued a complaint alleging that Flying Food had committed multiple violations of section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1). These included, inter alia, threatening employees with the loss of business opportunities and with the withholding of wage increases due to their support for the union, coercively interrogating an employee about his union sympathies, and informing employees that they were receiving wage increases as a reward for decertifying the union. The complaint also charged that the company had violated sections 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) & (3), by implementing retroactive wage increases to discourage employee support for the union. The Administrative Law Judge (ALJ) and the NLRB ultimately upheld these charges, among others, and Flying Food does not contest them here. The Board is entitled to summary enforcement of the uncontested portions of its order. *See Grondorf, Field, Black & Co. v. NLRB*, 107 F.3d 882, 885 (D.C. Cir. 1997).

The General Counsel's complaint further charged that the company had violated sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1) & (5), by withdrawing recognition from the union and thereafter refusing to recognize and bargain with it. That charge is the subject of the instant petition for review. In the proceeding before the ALJ (as in its briefs and argument in this court), the company did not dispute that it withdrew recognition from the union, but rather defended on the ground that the union had actually lost the support of a majority of its employees at the time recognition was withdrawn. To prove that proposition, the company introduced the disaffection petition and called Grana to testify concerning the circumstances of its receipt and authentication. The General Counsel vigorously cross-examined Grana, disputing whether some of the individuals listed on the petition had actually been employed on the date indicated on the petition, and whether the signatures of others were authentic.

Relying on two alternative rationales, the ALJ held that Flying Food had unlawfully withdrawn recognition from the union in violation of NLRA sections 8(a)(1) and (5). First, pursuant to the Board's decision in *Levitz*, the ALJ found that the company failed to satisfy its burden of showing that the union had actually lost the support of the majority of the employees in the bargaining unit at the time it withdrew recognition. Second, the ALJ found that pre-withdrawal unfair labor practices by the company had tainted the disaffection petition on which it relied in withdrawing recognition.

On appeal to the NLRB, the Board agreed that the withdrawal of recognition was unlawful, but did so only on the basis of the ALJ's first ground. The company, the Board said, "failed to show the Union's 'actual loss' of majority status," as required by *Levitz*. *Flying Foods Group, Inc.*, 345 NLRB No. 10, at 3 (Aug. 25, 2005). The NLRB accepted the company's

representation that there were 164 employees in the bargaining unit at the time the petition was purportedly signed on April 18, and that only 82 valid signatures were required to show a loss of majority support.  It noted, however, that although the petition had 96 signatures, it was undisputed that six of them should not be counted.  The Board found that three more signatures were of employees who had left the company before April 18.  Finally, after comparing the petition signatures of seven other employees with writing exemplars from the company's personnel records, the Board concluded that those seven were not authentic.  This left at most 80 valid signatures,[2] an insufficient number to satisfy the company's burden of proving the union's actual loss of majority status.  *See id.*

Flying Food now petitions for review, and the Board cross-petitions for enforcement of its order.

II

In *Levitz Furniture Co.*, 333 NLRB 717 (2001), the NLRB reversed a previous line of cases and held that "an employer may unilaterally withdraw recognition from an incumbent union only where the union has actually lost the support of the majority of the bargaining unit employees."  *Id.* at 717.  Under *Levitz*, an employer's good-faith doubt about a union's continuing majority status is insufficient to defend against a

---

[2]The Board noted that the General Counsel had also challenged the validity of several other signatures, but concluded that it did not need to consider those challenges because it had already found a sufficient number invalid to preclude a finding that the union had actually lost majority support. *See* 345 NLRB No. 10, at 3-4 n.12.

withdrawal-of-recognition charge. *Id.*[3] Rather, there is a "continuing presumption of an incumbent union's majority status," which may be "rebut[ted] . . . only on a showing that the union has, in fact, lost the support of a majority of the employees in the bargaining unit." *Id.* at 725. In a passage directly relevant to the instant case, the Board declared:

> We emphasize that an employer with objective evidence that the union has lost majority support -- for example, a petition signed by a majority of the employees in the bargaining unit -- withdraws recognition at its peril. If the union contests the withdrawal of recognition in an unfair labor practice proceeding, the employer will have to prove by a preponderance of the evidence that the union had, in fact, lost majority support at the time the employer withdrew recognition. If it fails to do so, it will not have rebutted the presumption of majority status, and the withdrawal of recognition will violate Section 8(a)(5).

*Id.*

---

[3]Prior to *Levitz*, the Board had "long held that an employer may withdraw recognition by showing either that the union has actually lost the support of a majority of the bargaining unit employees or that it has a good-faith doubt, based on objective considerations, of the union's continued majority status." *Levitz*, 333 NLRB at 717 (citing *Celanese Corp.*, 95 NLRB 664 (1951)); *see Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786-87 (1996). After *Levitz*, an employer may no longer unilaterally withdraw recognition on the basis of good-faith doubt. It may, however, obtain a Board-supervised election (known as a Representation Management (RM) election) by demonstrating good-faith reasonable uncertainty as to the union's continuing majority status. *See Levitz*, 333 NLRB at 717.

Flying Food does not contest the validity of *Levitz*. Instead, it contends that the NLRB erred both procedurally and substantively in applying the *Levitz* standard. We address the petitioner's two procedural arguments in this Part and its substantive argument in Part III.

A

Flying Food's first procedural argument concerns alleged flaws in the General Counsel's complaint. The company contends that the unlawful withdrawal charge should have been dismissed because the complaint failed "to aver . . . that the Company lacked objective evidence that a majority of employees had disaffected from the Union." Petitioner's Br. 10. Flying Food further contends that the wording of the complaint misled it into believing that the only basis for the unlawful withdrawal charge was a claim that the company's pre-withdrawal unfair labor practices had tainted the disaffection petition, and not a claim that the majority of unit employees still supported the union at the time of the withdrawal.

Flying Food's argument does not fly. The General Counsel's complaint alleged that the company's withdrawal of recognition was unlawful. Compl. ¶¶ 14, 24. Although the complaint did not expressly aver that the union retained majority support, it did not have to. Under *Levitz*, there is a "continuing presumption of an incumbent union's majority status," and the contention that an incumbent union has lost its majority status is "an affirmative defense," which the employer "has the burden of establishing." 333 NLRB at 725. Because a "plaintiff is not required to negate an affirmative defense in his complaint," *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993), the allegation of unlawful withdrawal was pleaded sufficiently. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (finding "no basis for imposing on the plaintiff an obligation to

anticipate [an affirmative] defense by stating in his complaint" its negative); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1276 (3d ed. 2004) (explaining that "allegations that seek to avoid or defeat a potential affirmative defense . . . are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading").

Nor is there any ground for the company's claim that it was misled into believing that the unlawful withdrawal charge rested solely on allegations that pre-withdrawal unfair labor practices had tainted the disaffection petition. To be sure, other paragraphs of the complaint did charge that Flying Food had committed unfair labor practices prior to April 18, 2001. *See, e.g.*, Compl. ¶¶ 8-13. But the allegation of unlawful withdrawal of recognition was a stand-alone charge, *see id.* at ¶ 14, and there is no reason to read it otherwise.

But even if there had been some ambiguity in the complaint, that would not have been grounds for dismissal. As we have long held, "[p]leadings in administrative proceedings are not judged by the standards applied to an indictment at common law." *Aloha Airlines, Inc. v. Civil Aeronautics Bd.*, 598 F.2d 250, 262 (D.C. Cir. 1979).[4] Rather, "[i]t is sufficient if the [petitioner] 'understood the issue' and 'was afforded full opportunity' to justify its conduct during the course of the litigation." *Id.* (quoting *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 350 (1938)).

---

[4]*See Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 734 (D.C. Cir. 1983); *Bakery Wagon Drivers, Local Union No. 484 v. NLRB*, 321 F.2d 353, 356 (D.C. Cir. 1963); *Kuhn v. CAB*, 183 F.2d 839, 841-42 (D.C. Cir. 1950).

It is clear Flying Food understood that the question of whether the union had actually lost majority support was at issue, and that it had a full opportunity to make a showing of such loss. In its pretrial pleading, the company acknowledged that:

> Under the Board's decision in [*Levitz*], the Company's withdrawal of recognition is lawful if it can show that the Union did not have (that it actually had lost) majority support at the time of the withdrawal. In the instant case, Flying Food intends to introduce evidence at the hearing that on April 17, 2001, it was presented with a petition signed by a majority of the bargaining unit members stating their desire to disaffect from the Union and that they no longer wanted the Union to represent them for collective bargaining purposes. Flying Food believes that the evidence will show that, after authenticating the petition signatures, it lawfully withdrew recognition from the Union based on the objective evidence that the Union had, in fact, lost majority support.

J.A. 509. And if the company had any residual doubt that it would have to defend the validity of the signatures, that doubt should have been erased by the General Counsel's vigorous cross-examination, which called into question the employment status of some individuals listed on the petition and the authenticity of the signatures of others. At that point, the company could have tried to bolster its defense by calling handwriting experts or the purported signatories themselves. Its failure to do so was not the consequence of a lack of either notice or opportunity.

B

Flying Food's second procedural argument is that the withdrawal-of-recognition charge should have been dismissed because the General Counsel failed to include, in his case-in-chief, evidence that the majority of employees were not disaffected from the union. In the absence of such evidence, the company contends, the ALJ should have granted its motion to dismiss at the close of the government's case. Instead, the ALJ permitted the proceeding to go forward, which in turn permitted the General Counsel to raise questions concerning the validity of the petition signatures during cross-examination of the company's own witnesses. The NLRB's "consideration of [such] subsequent evidence," the company insists, "belies procedural normalcy." Petitioner's Br. 10.

Once again, the petitioner misapprehends the burden it bore under *Levitz*. Because *Levitz* makes an actual loss of majority status an "affirmative defense" to an unlawful withdrawal-of-recognition claim, it is the defendant that "has the burden of establishing that defense," *Levitz*, 333 NLRB at 725, just as "in any other [case] in which an affirmative defense is raised," *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993). And just as the General Counsel (or any plaintiff) does not have to plead the non-existence of an affirmative defense in its complaint, *see supra* Part II.A, the General Counsel "is not required to negate an affirmative defense unless and until the defendant has placed it in issue." *Oakes v. United States*, 400 F.3d 92, 98 (1st Cir. 2005).[5] It is true that "[a]n employer *who presents evidence*

---

[5] *Cf. Watson v. United States*, 439 F.2d 442, 454 (D.C. Cir. 1970) (en banc) (noting that a "defendant raising . . . affirmative defenses at trial presumably must bear the burden of going forward with evidence" to prove those defenses); 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE:

that, at the time it withdrew recognition, the union had lost majority support should ordinarily prevail in an 8(a)(5) case if the General Counsel does not come forward with evidence rebutting the employer's evidence." *Levitz*, 333 NLRB at 725 n.49 (emphasis added). But if the General Counsel does then come forward, "the burden remains on the employer to establish loss of majority support by a preponderance of all the evidence." *Id.*

In this case, the employer presented evidence -- in the form of the disaffection petition -- that the union had lost majority support. The General Counsel then rebutted that evidence by casting doubt on the validity of the signatures on the petition. Upon a review of all the evidence, the NLRB concluded that the company failed to meet its burden of proving that the union had actually lost majority support. *See Flying Foods*, 345 NLRB No. 10, at 3-4. We detect no procedural error in the General Counsel's failure to include in his case-in-chief evidence that the majority of employees were not disaffected.[6]

III

Finally, Flying Food argues that the Board's conclusion -- that the employer failed to meet its burden of showing that the union had actually lost majority support -- was unsupported by

---

EVIDENCE § 6164 (1993) (stating that, "in the normal order of presentation, the defendant presents its evidence . . . supporting any affirmative defenses" after the completion of the plaintiff's case).

[6]There apparently is a dispute within the Board as to whether "a petition ostensibly signed by at least half of the unit employees" is alone sufficient to shift the burden of going forward to the General Counsel. *See Flying Food*, 345 NLRB No. 10, at 3 n.9. Analysis of that dispute is unnecessary to resolve the issues raised here, as the General Counsel did produce rebuttal evidence.

substantial evidence. *See* 29 U.S.C. § 160(e). In particular, the company makes two claims. First, it contends that the Board miscalculated the total number of employees in the bargaining unit, and hence the number required to constitute a majority. According to Flying Food, when the Board found that three signatories to the disaffection petition had left the company before the petition was signed, it should have reduced not only the number of valid signatures, but the total number of unit employees as well. That would have reduced the total number of employees from 164 to 161, requiring the company to authenticate only 81 -- rather than 82 -- signatures in order to show that the union lacked majority support. Second, the company contends that the Board erred in finding that the petition signature of employee Yurima Varela did not match her writing exemplar, a W-4 tax form. With these two errors eliminated, the company maintains, the evidence showed that the disaffection petition was signed by 81 employees out of 161 -- a majority, albeit a thin one.

Counsel for the NLRB rejects these claims. It was Flying Food itself that came up with the total of 164 unit employees, counsel argues, and the company should be held to that number. Moreover, according to Board counsel, that number was based on up-to-date payroll information that took into account the departure of the three employees. As for the signature of Varela, counsel insists that the signature on the petition is not the same as the signature on Varela's W-4.

Whatever the merits of Flying Food's evidentiary argument, we are barred from considering it because the company never presented it to the Board. Section 10(e) of the NLRA provides that "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). Where, as here, a

petitioner objects to a finding on an issue first raised in the decision of the Board rather than of the ALJ, the petitioner must file a petition for reconsideration with the Board to permit it to correct the error (if there was one). *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982) (holding that section 10(e) deprives courts of the power to hear issues first raised by a Board decision unless the petitioner "object[s] to the Board's decision in a petition for reconsideration or rehearing"); *see also Lee Lumber & Bldg. Material Corp. v. NLRB*, 310 F.3d 209, 216-17 (D.C. Cir. 2002); *Cobb Mech. Contractors, Inc. v. NLRB*, 295 F.3d 1370, 1378 (D.C. Cir. 2002). Flying Food proffers no "extraordinary circumstances" to excuse its failure to file, 29 U.S.C. § 160(e), but instead explains that it made a "strategic decision" to present its argument to this court rather than to seek reconsideration by the Board. Oral Arg. Tape 11:32. Characterizing its decision as "strategic," however, does not change the fact that the petitioner's "failure to seek Board reconsideration bars our review under section 10(e)." *Lee Lumber*, 310 F.3d at 216.

IV

Flying Food's petition for review is denied, and the Board's cross-petition for enforcement of its order is granted.

*So ordered*.