KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
The United States Supreme Court has cautioned that the trial process is not to be treated as “a poker game in which players enjoy an absolute right always to conceal their cards until played.” Williams v. Florida, 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The same ought to be true of labor relations. But participants on either side of the table could easily draw a different conclusion from Levitz Furniture Co., 333 NLRB 717 (2001), which holds that an employer withdraws recognition from a union “at its peril” even when it acts in good faith on a facially valid decer-tification petition, id. at 725. I write separately to express my view that Levitz should be carefully cabined in eases involving restored majority status so that it does not reward gamesmanship at the expense of transparency.[1]
The statute itself hints at one limiting principle. Section 8(a)(5) makes it “an unfair labor practice for an employer ... to refuse to bargain collectively with the representatives of his employees.” 29 U.S.C. § 158(a)(5) (emphasis added). Ordinarily, tfye act of “refus[al]” is volitional: it requires “a positive willingness,” Webster’S Third New International Dictionary 1910 (1993), or a knowing “rejection],” XIII Oxford English Dictionary 495 (2d ed. 1989), not simply a failure. See, e.g., Overton v. City of Austin, 748 F.2d 941, 949 (5th Cir. 1984) (court’s “mere failure” to grant injunctive relief was “not the same as ‘refusing’ it”); Hinson v. Mich. Mut. Liab. Co., 275 F.2d 537, 539 (5th Cir. 1960) (under since-amended version of Federal Rule of Civil Procedure 37, excusable “failure” to comply with court order was not “refusal” to obey it). It is linguistically jarring to. say that an employer acting on a facially valid decertification petition “refuses” to bargain with a union that, unbeknownst to the employer, has covertly collected enough revocation signatures to restore majority status.
Even Levitz is distinguishable on that basis.- When the employer there told the union it had “objective evidence” that the union no longer enjoyed majority status, the union replied that it had evidence to the contrary and was “ready at any time” to present it. 333 NLRB at 719 (internal quotation omitted). The émployer withdrew recognition anyway, without examin *1159 ing the union’s alleged evidence. Id. That is a refusal to bargain.
I read Levitz to hold that the employer assumes the risk of being wrong about the union’s majority status, not that the employer assumes the risk of union subterfuge. The Act must be construed in a way that fosters “industrial peace” and “stability in collective-bargaining relationships” “without impairing the free choice of employees.” NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 794, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990) (internal quotation omitted). Giving a union free rein to withhold information about restored majority status would sow tension and distrust, not peace and stability. For fear of an unforeseeable ULP charge, a prudent employer would be hard pressed to withdraw recognition even when presented with a seemingly reliable decertification petition — and even where, as here, the petition demands “immediate[ ]” ouster. JA 181-32. So much for employee free choice.
True, an employer with a good-faith doubt about a union’s majority status can call for an election, Levitz, 338 NLRB at 723, but it is no cure-all. A union can and often does file a ULP charge — a “blocking charge” — “to forestall or delay the election.” Id. at 732 (Member Hurtgen, concurring). Even when the charge is dismissed and the union loses the election, it can file objections afterward. Id. The process takes months. Jeffrey M. Hirsch, NLRB Elections: Ambush or Anticlimax? 64 Emory L.J. 1647, 1652-53 (2015) (summarizing Board statistics about election delays); see id. at 1663 (noting that recent election reforms have not addressed use of blocking charge as “tactic” for “delay”). In the meantime, the employer must continue to recognize the union despite its putative lack of majority support. Levitz, 333 NLRB at 732 (Member Hurtgen, concurring).
The Union’s conduct in this case highlights the foregoing problems. Had the Union’s lead organizer, Lian Alan, had any concern for the wishes of unit employees, he would have notified Scomas as soon as he collected the revocation signatures so that, in keeping with the decertification petition, the Board could conduct an election. After all, 23 petitioners remained. They represented 42 per cent.of the unit employees. Their signatures alone would have triggered an election. NLRB Case-handling Manual, Pt. 2, Representation Proceedings § 11023.1 (Jan. 2017) (setting required threshold of “[p]etitioner interest” at 30 per cent); see JA 131-32 (petition called for election if petitioners “make up 30% or more (and less than 50%) of the bargaining unit”). At minimum Alan should have told Scomas about the revocation signatures when Scomas withdrew recognition so that it could take immediate corrective action. His refusal to do so reflects that he deliberately let Scomas act “at its peril,” Levitz, 333 NLRB at 725, positioning the Union to pursue a ULP charge and delay the election.[2] It was a neat trick, *1160 really. One doubts the Union would have won an election after years of doing nothing for the employees. And here we are another three and one-half years later with the Union still at the helm.
In short, I do not think an employer violates the Act when, in good faith, it withdraws recognition from a union as a result of the union’s intentional nondisclosure of its restored majority status. Sco-mas’s conduct would fit that description had Scomas established that, fully informed, it would not have withdrawn recognition.[3] But it introduced no direct evidence on that score. See, e.g., Oral Arg. Recording 1:42-2:06 (Scomas’s counsel acknowledged that general manager Roland Gotti did not testify about “what he would have done if he had known of the six defectors”); cf. Johnson Controls, Inc., NLRB Case No. 10-CA-151843, ALJ Decision at 13, 2016 WL 626283 (Feb. 16, 2016) (finding no violation where, inter alia, employer “remained open to considering evidence that contradicted the disaffection petition”). Thus, I see no way around the unsatisfying conclusion that Scomas violated the Act.

. I am not alone in this view. In the Board decision, Member Johnson suggested that Lev- itz should not be read as "a policy allowing unions to withhold evidence of reacquired majority support.” 362 NLRB No. 174, at 1 n.2. Similarly, in Johnson Controls, Inc., NLRB Case No. 10-CA-151843, 2016 WL 626283 (Feb. 16, 2016), an ALJ declined to extend Levitz "so far that it smiles on ‘gotcha.’ ” ALJ Decision at 13. As far as its docket shows, the Board has not issued a final decision in Johnson Controls.

. If Scomas had challenged the ALJ’s credibility findings, this likely would have been the rare case in which I would have voted to set them aside as "patently insupportable.” Douglas Foods Corp. v. NLRB, 251 F.3d 1056, 1061 (D.C. Cir. 2001) (internal quotation omitted). Alan’s concealment of the revocation signatures says a great deal about his forthrightness generally. The employees who revoked their signatures testified that they did so because Alan told them, in some formulation or another, that they faced dire consequences— loss of benefits, termination or immigration consequences — if the Union were decertified. 362 NLRB No. 174, at 5. The ALJ rejected their testimony because they could not agree on what words were uttered, id., but the collective gist was consistent. If their accounts differed in minor particulars, the difference showed only that they did not script and rehearse a unified story beforehand. It was Alan's account that could not be reconciled at any level of generality.

. Because a union’s loss of majority status is "an affirmative defense” to a ULP charge, "tfie employer has the burden of establishing” it. Flying Food Grp., Inc. v. NLRB, 471 F.3d 178, 183 (D.C. Cir. 2006) (internal quotations omitted). By the same logic, I would require an employer who claims union concealment to show that it would not have withdrawn recognition had it known of the union's restored majority status.