NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0729n.06

Nos. 08-2242/2384

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 09, 2009**
LEONARD GREEN, Clerk

TOWN & COUNTRY PLUMBING &
HEATING, INC.,

     Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

     Respondent/Cross-Petitioner,

and

PLUMBERS AND PIPEFITTERS LOCAL 333,

     Intervenor.

_____/

ON APPEAL FROM THE
NATIONAL LABOR
RELATIONS BOARD

Before:  MARTIN, COLE, and KETHLEDGE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Town & Country Plumbing & Heating, Inc. appeals a National Labor Relations Board decision that found that the Company violated Sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, when it withdrew recognition from the Plumbers and Pipefitters Local 333 Union because the Company had not engaged in collective bargaining for a "reasonable period of time."

There are two issues before us in this appeal.  First, we must determine whether the Board was permitted to date the beginning of the "reasonable period" of collective bargaining as being the date of the first face-to-face meeting, or whether it was required to date the beginning of the

"reasonable period" as the date the Regional Director preliminarily approved the formal settlement between the Union and the Company. After determining the correct date, we must determine whether there is "substantial evidence in the record as a whole to support the Board's conclusions" that the Company failed to engage in collective bargaining for a reasonable period of time. Here, the Board's decision to use January 16, 2003 as the beginning of the collective bargaining period and its determination that the Company had not engaged in collective bargaining for a "reasonable period" were reasonable and based on substantial evidence. We therefore **AFFIRM** the Board's decision.

I.

A.    **First Round of Collective Bargaining**

Town & Country Plumbing & Heating, Inc. is a small plumbing contractor whose principal place of business is in Bath, Michigan. Following an organizing campaign among the Company's plumbers and helpers, the Union filed unfair labor practice charges against the Company. On May 2, 2000, the Board's Regional Director approved an informal settlement agreement between the Company and the Union in which the Company agreed to recognize the Union as the exclusive bargaining representative for a select group of its employees, to negotiate in good faith toward a collective bargaining agreement, and to provide back-pay to twelve employees.

From May 2, 2000 through March 14, 2002, the Company and the Union engaged in collective bargaining that the parties agree was "in compliance with the settlement agreement." However, the parties were unable to reach an initial collective bargaining agreement.

In March 2002, the Company's employees submitted a petition to the Company stating that they no longer wished to be represented by the Union. The Company informed the Union of the petition and that it was withdrawing recognition by letter dated March 14. The Union filed unfair labor practice charges. The Board's General Counsel issued a complaint alleging, in relevant part, that the Company had unlawfully withdrawn recognition from the Union. The Company agreed to settle the case and to re-recognize and bargain with the Union. This formal settlement agreement, which contained a stipulation for a consent order by the Board and judicial enforcement of the order, was approved by the Regional Director on October 29. The settlement agreement was "subject to the approval of the Board, and it [did] not become effective until the Board ha[d] approved it."

B.      **Second Round of Collective Bargaining**

On October 30, 2002, the Company sent the Union's chief negotiator, David Knapp, a letter informing him that the Company wanted to provide wage increases for five bargaining unit members. The Company added that it would "not provide [wage increases] unless and until the company and the union reach an agreement through negotiations." By letter dated October 31, Knapp agreed to the proposed wage increases and requested personal information for bargaining unit members. The Company provided this information on November 6 and proposed future bargaining dates. By letter dated November 18, in advance of the requirement in the settlement agreement to begin collective bargaining, the Company officially re-recognized the Union, stated that it was engaged in collective bargaining, and proposed dates for future meetings. On November 20, the Company sent the Union additional information that the Union had requested.

The Company and the Union agreed to meet for negotiations on December 5, but the meeting was cancelled at the Union's request because Knapp had become seriously ill. Jim Davis took over the role of lead bargainer for the Union during Knapp's convalescence.

In December, the Company proposed and the Union agreed via letter to wage increases for certain employees. The parties exchanged two additional letters offering bargaining dates, agreeing to meet on January 16, 2003. On that date, the parties met for their first face-to-face meeting after the Company re-recognized the Union and engaged in negotiations. The Union proposed its standard National Model Residential Agreement to permit employees to work anywhere in the state without restriction, but it had not brought a copy of the agreement to the meeting.

On February 3, the Board approved the formal settlement agreement. This Court enforced the settlement on September 18, 2003. *N.L.R.B. v. Town & Country Plumbing & Heating, Inc.*, No. 03-1630, 2003 WL 22171536 (6th Cir. Sept. 18, 2003).

On February 7, the Company sent Davis another list of bargaining unit employees and their personal information at the Union's request. The parties met on February 13, and the Union brought a copy of the Residential Agreement. The proposed Agreement did not include wage rates; Davis agreed to prepare a Schedule A to constitute the Union's wage and benefit proposal.

Davis faxed a copy of the Union's proposed Schedule A to the Company's attorney on March 7. The Company previewed the Union's proposal of March 7. By letter dated March 13, the Company agreed with all of the terms and conditions of the Residential Agreement and the wage proposal included on Schedule A with some modifications. On March 13, the Company concurrently

proposed wage increases to bargaining unit employees, which were accepted by the Union by letter dated March 14. In March and April, the parties exchanged letters regarding bargaining dates.

At the final bargaining session on May 21, the Union presented proposals to cover commercial and residential work. The Company alleges that the Union withdrew the previous Residential Agreement and proposed a new agreement: the Union's standard commercial agreement with a different residential supplement. The Company and the Union also discussed health insurance costs. Additionally, the Union was to present a counterproposal as to benefits at the next session. On June 10, the Company's lawyer sent the Union information that it had requested regarding the costs for providing insurance to Company employees and requested additional bargaining dates. At this point in the negotiations, it appears that the parties had agreed on most of the terms of the contract.

Before additional dates were set, the Company alleges that it received a petition signed by the majority of its employees in the bargaining unit requesting that the Company withdraw recognition of the Union as the employees' representative. By letter dated June 27, the Company withdrew recognition from the Union. The Company states that there has been no allegation by its employees that the petition submitted by the employees in June 2003 was the product of any unfair labor practices by the Company. The Union filed unfair labor practice charges.

### C. N.L.R.B. Findings

Acting on the Union's unfair labor practice charge, the Board's General Counsel issued a complaint alleging that the Company engaged in conduct that violated Sections 8(a)(5) and (1) of the Act, which makes it an unfair labor practice for an employer "to refuse to bargain collectively

with the representatives of his employees . . . ," 29 U.S.C. § 158(a)(5), when it withdrew recognition from the Union without bargaining for a reasonable period of time after entering into a settlement of unfair labor practice charges. The parties jointly filed a stipulation of facts and motion to transfer proceedings to the Board, waiving a hearing and decision by an administrative law judge. The Board approved the stipulation and granted the motion. Thereafter, on August 29, 2008, the Board found that the Company violated Sections 8(a)(5) and (1) of the Act when it withdrew recognition from the Union because it had not bargained for a reasonable period. The Board entered an affirmative bargaining Order requiring bargaining for at least a reasonable period of time, holding that such an order would not unduly prejudice the Section 7 rights of the employees who may oppose continued union representation because: (1) the order is only for a reasonable period of time, not indefinitely; (2) it will foster industrial peace to reinstate the Union and permit employees a fair opportunity to assess its performance; and (3) no alternative remedies are sufficient. The Company timely filed a Petition for Review of a decision of the Board on September 25, 2008. The Board subsequently cross-petitioned for enforcement of its Decision and Order and the Union intervened as an interested party by leave of this Court.

## II.

Our review of the Board's findings of fact is limited to determining whether those findings are supported by "substantial evidence" in the record. *Gatliff Coal Co. v. N.L.R.B.*, 953 F.2d 247, 250 (6th Cir. 1992) (citations omitted). We also use the substantial evidence standard in reviewing the Board's application of law to the facts. *Id.* On appeal, we may not disturb the Board's findings where there is substantial evidence in the record as a whole to support the Board's conclusions. *Id.*

If supported by substantial evidence, the Board's conclusions may not be disturbed even if we could justifiably have made a different choice judging the matter *de novo*. *Id.* In determining whether evidence is substantial, we must take into account anything in the record which fairly detracts from the weight of the evidence. *Id.* Evidence is considered substantial if it is adequate to a reasonable mind to uphold the decision. *Id.* at 250-51.

III

## A. The Date From Which The Reasonable Time Period Is Calculated

The Company first argues that the Board's finding that the "reasonable period" for engaging in collective bargaining began, at the earliest, at the date of the parties' first face-to-face meeting, rather than the date of the Company's letter stating that it was engaging in collective bargaining, constituted a rule change that was not approved under the appropriate rule-making procedures of the Administrative Procedures Act. However, we find that the Board reasonably concluded that the date of the first face-to-face meeting following the Company's formal agreement to engage in bargaining constituted the earliest date from which to measure the "reasonable period" of bargaining. Additionally, as this decision was in keeping with prior case law, it does not constitute a rule change.

This Court has seconded the Board's policy that "an employer must bargain with a union for a reasonable period without regard to its majority status where the bargaining relationship arose as a result of a settlement agreement." *N.L.R.B. v. Universal Gear Serv. Corp.*, 394 F.2d 396, 398 (6th Cir. 1968) (citations omitted). The Board calculates the reasonable period on a case-by-case basis by applying factors enumerated in *Lee Lumber & Building Material Corp.*, 334 N.L.R.B. 399, 402 (2001), *enforced*, 310 F.3d 209 (D.C. Cir. 2002).

As the Board noted, three dates were proposed for the beginning of the collective bargaining period. The Company argued that October 29, 2002, the date that the Regional Director approved the parties' formal settlement, was the appropriate date and that this was the date from which the Board traditionally measured the "reasonable period." The Board's General Counsel proposed either January 16, 2003, the date of the parties' first face-to-face meeting or February 3, 2003, the date that the Board approved the formal settlement agreement.

The Board found that the October 29, 2002 date was not applicable here because collective bargaining commences either at the time of the first face-to-face meeting or at the approval of the formal settlement agreement by the Board, but not at the agreement's preliminary approval by the Regional Director. The Company incorrectly contends that this constitutes a rule change by the Board because it fails to recognize the difference between formal and informal settlement agreements. In the case of an informal agreement, for which the Regional Director's signature is the final action before bargaining must commence, the reasonable period is measured from the date that the Regional Director approves the informal settlement of unfair labor practices. *AT Sys. West*, 341 N.L.R.B. 57, 62 (2004). However, the settlement at issue was a formal settlement, the enforcement of which remained contingent on Board approval. 29 C.F.R. § 101.9(c)(2) (2009). Additional action by the Board was required for the formal settlement at issue to be finalized, but no further action is required on an informal settlement after the Regional Director has approved it. The October 29 settlement included statements that the settlement was "subject to the approval of the Board" and did "not become effective until the Board ha[d] approved it." Moreover, the Company's letter of November 20, 2002, stated that "[s]ince the Board has not issued [an] order . . . the settlement

agreement does not require [the Company] to recognize and meet with [the Union] at this time."

Thus, the Board's decision not to date the commencement of the "reasonable period" of collective

bargaining from the date of the October 29 letter did not constitute a rule change.

The Company also argues that the Board has a long-standing rule favoring commencing the

time of a company's good faith bargaining process upon the date of a company's voluntary

recognition of a union. However, it cites cases where the voluntary recognition took place before

Board involvement, not cases in which "voluntary recognition" took place only after a Board

decision requiring the company to re-recognize a union and return to bargaining. We cannot find,

and the Company has not shown, an instance in which a company's decision to begin negotiations

with a union pursuant to a formal settlement agreement before the Board's approval of the agreement

has been sufficient to show the commencement of negotiations.

Additionally, the Board has previously emphasized the importance of face-to-face meetings

over other forms of communication. *In re Contract Carriers Corp.*, 339 N.L.R.B. 851, 852 (2003).

Thus, although the Company chose to recognize the Union before it was required to do so by the

Board, the Board's decision not to date the commencement of the "reasonable period" from the

provisional approval of the formal settlement by the Regional Director was reasonable and supported

by substantial evidence.

Indeed, the Board never established a firm date for the commencement of the "reasonable

period," finding that even if it selected the earlier of the two proposed dates, the January 13, 2003

face-to-face meeting, the five-and-a-half months of negotiating that elapsed before the Company

withdrew recognition from the Union, in which the parties met three times for a total of six hours,

did not constitute a reasonable period. Though the Company and the Union had exchanged some letters prior to the January 16, 2003 meeting, the Board's decision to find that bargaining began no earlier than that date was reasonable and supported by substantial evidence and did not constitute a rule change.

### B. The Reasonableness Of The Time Engaged In Collective Bargaining

The Company argues that the Board's decision constitutes an extension of the six-month period during which a union has an irrebuttable presumption of majority status after re-recognition and that this alleged extension was not supported by substantial evidence. This argument, of course, is premised upon the Company's erroneous contention that the reasonable period began on October 29, 2002. The Board and the Union argue that the Board properly concluded that the Company violated the Act when finding that the time period that elapsed was not reasonable. The Board looks at each negotiation case-by-case in determining whether a reasonable time period has elapsed before withdrawal from negotiations. This time frame must be reasonable, but it cannot be required to last indefinitely; it seems unlikely that a reasonable period would last longer than ten months. Here, however, fewer than five-and-one-half months elapsed between the first face-to-face meeting on January 16, 2003 and the withdrawal of recognition on June 23, 2003.

*Lee Lumber* requires a presumptive six-month bargaining period following an adjudicated unfair labor practice, using a multi-factor test to determine whether more than six months of bargaining is necessary. *Lee Lumber*, 334 N.L.R.B. at 402. However, the Board has declined to decide whether this presumptive minimum applies following a settlement agreement, *id*. at 399 n.7, and has simply applied the *Lee Lumber* factors. These factors include: (1) whether the parties are

bargaining for an initial contract; (2) the complexity of the issues being negotiated and of the parties'

bargaining processes; (3) the amount of time elapsed since bargaining commenced and the number

of bargaining sessions; (4) the amount of progress made in negotiations and how near the parties are

to concluding an agreement; and (5) whether the parties are at impasse. *Id*. at 402.

In this case, the Board concluded that three of the five *Lee Lumber* factors weighed in favor

of finding that a reasonable period of time, beginning either January 16 or February 3, had not

elapsed before the Company withdrew recognition on June 27, no more than five-and-one-half

months later. The Board found that: (1) the parties were bargaining for an initial contract; (3) the

parties did not bargain for long enough nor hold enough bargaining sessions; and (5) the parties were

not at an impasse, all of which weighed in favor of finding that a reasonable amount of time had not

elapsed. The Board found that the second factor weighed "somewhat" in favor of finding that the

period had elapsed because the issues under discussion were not complex. The Board also found

that the fourth factor weighed only "slightly" in favor of finding that the period had elapsed because

some progress had been made but the parties were still negotiating nearly all of the economic issues

when recognition was withdrawn.

The Company argues that the Board should have taken into account the bargaining sessions

that took place before it withdrew recognition for the first time in determining whether it had

negotiated for a reasonable period after re-recognizing the Union under the formal settlement

agreement. However, in *AT Systems West*, the Board assessed the reasonableness of only the three-

month post-settlement bargaining period, though the parties had previously bargained for seventeen

months toward the same contract. *AT Sys. West*, 341 N.L.R.B. at 62. It is logical for the Board to

consider each round of bargaining individually because it likely follows an atmosphere of acrimony following an organizing campaign or a withdrawal of recognition. *See Lee Lumber*, 334 N.L.R.B. at 403.

The Company also contends that the Board erred in not considering more of the correspondence between meetings as evidence of sufficiency of the bargaining sessions. The Board considered the only substantive exchange in its opinion: when the Union sending the Company a proposed addendum to the Residential Agreement, Schedule A, and the Company's response with proposed exceptions. The remaining correspondence consists of scheduling of bargaining sessions, offers of back-pay to certain employees and acceptances thereof, and requests for information that were made and fulfilled rather than actual negotiations. As these are not substantive negotiations, the Board's decision not to consider them was reasonable.

Thus, the Board's decision that the Company had not engaged in collective bargaining for a "reasonable period" before withdrawing recognition from the Union was reasonable and based on substantial evidence in the record as a whole to support its conclusions of fact and its application of the law to these facts. *Gatliff Coal*, 953 F.2d at 250 (citations omitted).

IV

For the foregoing reasons, we **AFFIRM** the Board's Decision and Order.